FRUGÉ, Judge.
The plaintiffs, the widow and surviving child of Gilbert Junior Chaney, brought suit in the district court against Mid-State Sand and Gravel Co., Inc., and its insurer to recover for Gilbert Chaney’s alleged wrongful death. The trial judge dismissed the suit and the plaintiffs have appealed to this court.
In June, 1962, Gilbert Chaney, then 24 years of age, was employed by Alvin War-mack as a truck driver on a road construction project. At the time of his death he was driving a tandem gravel truck and trailer of 15-yard capacity back and forth between the Thomas gravel pit near Wilda, Louisiana, and the jobsite. This gravel pit and the area where the accident occurred is, by lease or similar arrangement, under the control of Mid-State Sand & Gravel Company, Inc., the defendant herein. The accident occurred on a winding graveled road which runs between Wilda and the Simpson-Seiper road. The defendant employs a segment of this graveled road as a means of ingress and egress to its gravel pit operations but because the road’s surface suffers from heavy pounding by the trucks and equipment, the defendant maintains portions of the road at its own expense. This maintenance consists of periodic additions of gravel to the surface and frequent grading by the defendant’s motor grader. At the point where Gilbert Chaney was killed, the road bed spans a shallow gulley, damming the water on the higher side of the gulley and forming a small pond several feet in depth and adjacent to the road for several hundred yards. —
The record establishes that the road in question is some 24 to 26 feet in width, with a 17 to 18 foot packed gravel surface and 3-foot dirt shoulders on either side. Approximately 100 feet from where the accident occurred, the road widens considerably and the truck drivers hauling gravel from the defendant’s pit customarily use this area to allow free passage of loaded trucks, the practice being for the returning empty trucks to pull into the widened area and park, thus allowing the loaded outgoing trucks the full width of the roadway on which to travel.
On the morning of the accident, Gilbert Chaney drove his empty truck into the de *648 fendant’s gravel pit where the truck was loaded with some 15 yards of pit ran gravel weighing approximately 50,000 pounds. After his track was loaded, Chaney drove out of the pit area proper and onto the above described roadway, the pond being on Chaney’s left as he proceeded from the pit Some 250 feet from the pit area, the defendant’s roadgrader was traveling upon the gravel road also away from the pit, so that the Chaney track was approaching the roadgrader from the rear. Chaney was alone at the wheel of his truck at the time and, as the locus of the accident was screened from the view of the men working in the pit area, the only person who witnessed the actual accident was William Ward, the operator of the roadgrader. Mr. Ward testified that he was driving the grader along the dam or fill section of the road and because he was not grading at that time, the blade of the motor grader was raised and turned lengthwise beneath the grader. He stated that at this angle the blade projected only slightly beyond the wheels of the machine, if at all, and that, with the blade in this position, the grader is approximately 8 feet wide. He further testified that he was traveling on the right side of the road and as he neared the widened area he noticed the Chaney truck approaching from the rear. On cross examination by plaintiffs’ attorney, Mr. Ward related his version of the ensuing events:
“Q Immediately before this accident happened, did you see the truck driven by Gilbert Chaney coming from the — approaching from the rear?
A I seen the track coming but I didn’t know who it was, nothing about it.
Q Well I am referring to the same track that turned over in the pond.
A That’s right.
Q You saw that through the rear view mirror ?
A That’s right.
Q You didn’t turn around to look at it:
A Ho, sir.
Q At that time?
A No, sir.
Q As soon as you saw him approaching from the rear in the — I’ll ask you another question — Were you able to tell how far he was behind you when you saw him in this mirror ?
A No, sir.
Q As soon as you saw his truck in the rear view mirror approaching you you quickly pulled to the righthand ■ side of the road didn’t you?
A I probably was on the right hand side but it was a narrow place and I went on — I tried to go on up to the wide place and did. And stopped.
******
Q You say you moved on to a wider point in the road before you stopped ?
A That’s right.
Q Did you stop your grader when you reached that point?
A Yes, sir.
Q It was only then that you looked around is that right?
A That’s right.
Q When you looked around what did you see?
A I seen the truck in the water turning over.
******
Q After you saw the truck in your rearview mirror, then you directed your attention to the road ahead and where you were guiding the grader didn’t you ?
A That’s right.
Q So that from the time you saw him until he went into the water you' don’t know how far he traveled ?
A No, sir.
*649 Q And you don’t know perhaps whether or not his truck had stalled or stopped before it caved into the water?
A No, sir.
Q After you looked back and saw his truck going into the water what did you do?
A I jumped out and immediately ran back there to see if I could see him come out and went to hollering for somebody to assist and to find out about the truck being turned over.”
There was no other eyewitness who could testify as to the manner in which the accident occurred. However, numerous photographs filed in the record show that the truck driven by Gilbert Chaney veered to the left and toward the pond until the left wheels of both the tractor and trailer were very near the edge of the drop-off and entirely upon the shoulder of the road. At this point the left wheels sank into the shoulder under the pressure of the load and the overbalanced truck toppled over into the pond, trapping Gilbert Chaney in the cab and drowning him.
In brief the plaintiffs argue that the accident occurred as Gilbert Chaney attempted to pass the roadgrader which was traveling on the right side of the road and that the left edge of the roadway collapsed beneath the left wheels of Chaney’s truck, thus causing the truck to overturn. The plaintiffs allege specific acts of negligence on the part of the defendant in failing to provide and maintain a safe roadway and in failing to warn the deceased of the allegedly dangerous condition of the shoulders. In addition, the plaintiffs rely on the doctrine of res ipsa loquitur.
The defendants contend that the segment of the road where the accident occurred is in fact a public road and that the defendants were under no duty to maintain the road for the safety of the deceased and that the cause of the accident was the contributory negligence of the deceased in driving a heavily loaded truck along the dirt shoulder of the gravel road and too near the adjacent body of water.
In view of the conclusion we have reached, we find it unnecessary to discuss the issue of whether the road in question was a public or private road but proceed forthwith to a discussion of the allegations of the specific acts of negligence and the application of the doctrine of res ipsa lo-quitur to the present facts.
As noted above, the graveled portion of the road at the point where Chaney’s truck entered the pond is approximately eighteen feet in width with a three foot dirt shoulder on either side of the graveled portion. The road’s surface was dry on the date of the accident. Several witnesses, including the State trooper who investigated the accident, testified that the road in question was as wide or wider than most gravel roads in Ward 7 of Rapides Parish and was, in fact, in better general condition (Tr. 189). The record reflects that up to one hundred gravel trucks per day travel the road leading to the gravel pit and that on occasion equipment weighing some 90,-000 pounds has been transported over the road without incident. The trial judge, in his reasons for judgment, indicated that the defendant was free from negligence with regard to the construction of the road and that the unfortunate accident which took the life of Gilbert Chaney was probably caused by the negligence of the deceased or by some defect in the truck or its equipment. After a careful review of the record in this case, it is our view that the evidence does not support the allegations of specific negligence on the part of the defendant and that the trial judge was correct in so concluding.
Despite the plaintiffs’ urging, we find it unnecessary to discuss the application of the doctrine of res ipsa loquitur to the present facts, for the inference of negligence which is the basis of that doctrine is effectively negatived by this court’s *650 conclusion specifically absolving the defendant of actionable negligence.
Therefore, for the foregoing reasons the judgment of the district court is hereby affirmed, the plaintiffs-appellants to bear all costs.
Affirmed.